**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LEON R. KOZIOL, individually and as**
**natural parent of Child "A" and Child "B,"**

                                        **Plaintiff,**

        **v.**                                                          **12-CV-823**

**KAREN PETERS, _et al._,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                        **DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiff Leon R. Koziol, an attorney suspended from the practice of law in New

York, commenced this action pro se on May 18, 2012.  In a rambling, disjointed, and

nearly incomprehensible complaint, Plaintiff asserts claims against the various defendants

alleging violations of his constitutional rights.  Plaintiff's action seemingly arises from his

custody and child support proceedings in New York state court, his subsequent

suspension from the practice of law, and his current inability to cure his suspension. _See_

_generally_, compl.

        Presently before the Court are two motions to dismiss, and plaintiff's cross-motion

for a preliminary injunction.  The first motion to dismiss [dkt. # 10] is brought by the

justices of the New York State Supreme Court, Appellate Division, Third Department[1]

("Third Department justices"), three members of the Third Department's Committee on

Professional Standards[2] ("Committee"), and retired New York State Supreme Court

Justice Michael Daley ("Judge Daley")(collectively "State Defendants").  See Dkt. # 10.

The second motion is brought by the City of Utica ("the City").  See Dkt. # 12.  The City

seeks dismissal of the claims against it, monetary sanctions against plaintiff pursuant to

Federal Rule of Civil Procedure 11(b), and an order enjoining plaintiff from filing further

vexatious litigation.  Plaintiff's cross-motion seeks a "preliminary injunction enjoining the

enforcement of an indefinite license suspension order issued on September 23, 2010,

having a one-year term, removal of a letter directive which operates as a prior restraint

upon free speech, enjoining the conduct of disciplinary defendants during the pendency of

this action and an order denying motions on the pleadings filed by the various

defendants." Dkt. # 16.  Both sets of defendants have filed reply/opposition papers to

plaintiff's cross motion.  See dkt. # 18; dkt. # 19.

## II.  BACKGROUND

In August 2008 and May 2009, plaintiff, who maintained a practice of law in Utica,

New York, was charged with multiple counts of professional misconduct in violation of

various provisions of the former Code of Professional Responsibility. *See In Re Koziol*, 76

A.D.3d 1136, 1137-38, 907 N.Y.S.2d 697 (3d Dept. 2010), *appeal dismissed*, 15 N.Y. 3d

943, 940 N.E.2d 920 (N.Y. 2010), *leave to appeal denied,* 16 N.Y.3d 853, 947 N.E.2d 159

---

[1]The named defendant justices are Karen Peters, Thomas Mercure, Robert Rose, John Lahtinen, Edward Spain, Bernard Malone, Jr., Michael Kavanaugh, Leslie Stein, William McCarthy, Elizabeth Garry, and John Egan, Jr.

[2]The named defendant committee members are Monica Duffy, Peter Torncello and Steven Zayas.

(2011) *cert denied*, 132 S. Ct. 455, 181 L. Ed. 2d 295 (U.S. 2011).  Plaintiff denied

material allegations of the petitions and the matters were referred for separate hearings by

the New York State Supreme Court, Appellate Division, Fourth Department. *Id.*  The

hearings were held in 2009 and the Referees' Reports sustained the charges of the earlier

petition in part and the charges of the later petition in full. *Id.*  The Fourth Department's

Attorney Grievance Committee, the petitioner in these disciplinary matters, moved to

confirm both reports. *Id.*  Plaintiff cross-moved to set aside both reports, to dismiss the

petitions, and for other related relief. *Id.*

On February 5, 2010, the Fourth Department issued an order suspending Plaintiff

from the practice of law in the State of New York for an indefinite period because plaintiff

willfully violated a child support order issued by the Supreme Court of Oneida County on

October 1, 2009. *Id.*[3]  On April 28, 2010, the Fourth Department issued an order

transferring the then-pending disciplinary matter to the Third Department for further

disposition of the two petitions. *Id.*; *see also* Pl. ex. D.[4]

On September 23, 2010, the Third Department found that plaintiff

engaged in conduct involving dishonesty, fraud, deceit or misrepresentation
with respect to five clients [] and in his responses to [the Committee on
Professional Standards] . . . ; engaged in conduct prejudicial to the
administration of justice with respect to one client [] and in his responses to
[the Committee on Professional Standards] . . . ; failed to take steps to the
extent reasonably practicable to avoid foreseeable prejudice to the rights of
a client [] . . . ; entered into a business transaction with a client [] and failed
to disclose the terms of the agreement in writing, failed to advise the client to
seek independent counsel regarding the business transaction, and failed to

---

[3] This particular suspension was lifted on January 26, 2012. <u>See</u> Pl. ex. D.

[4] Plaintiff originally moved to transfer the disciplinary matters to a different Judicial Department, but
the motion was denied with leave to renew. Pl. ex. D.  Thereafter, the Fourth Department revisited Plaintiff's
motion and transferred a matter to the Third Department. *Id.*

obtain the client's consent in writing, after full disclosure, to the terms of the transaction and to respondent's inherent conflict of interest in the transaction . . . ; neglected the legal matters of three clients [] . . . ; knowingly made a misleading statement of fact to a client [] . . . ; and engaged in conduct which reflects adversely upon his fitness as a lawyer with respect to five clients [] and in his responses to [the Committee on Professional Standards] . . . .

*In Re Koziol*, 76 A.D.3d at 1137-38

The Third Department determined that because plaintiff "ha[d] engaged in multiple instances of professional misconduct over a period of years," and because "[t]he record . . . raise[d] concerns about [plaintiff]'s continuing ability to discharge his professional obligations," he was suspended from the practice of law for "a period of one year, effective immediately, and until further order of this Court." *Id.* at 1138.  The Third Department further ordered that

for the period of suspension, respondent is commanded to desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another; and respondent is hereby forbidden to appear as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority, or to give to another an opinion as to the law or its application, or any advice in relation thereto.

*Id.*

Plaintiff contends that his one-year suspension was completed as of September 23, 2011, compl. ¶ 49, and he thereafter initiated the reinstatement process but has been thwarted in that effort by the State defendants. *Id.* ¶ 57.  As discussed below, the reinstatement process is presently on-going and subject to a continuing inquiry by the Third Department's Committee on Professional Standards. *Id.* ¶¶ 49, 57, 62, 76.

### a.   Claims against the State Defendants

In a rambling affidavit in support of his application for a preliminary injunction,

plaintiff asserts that the Third Department justices' decision to suspend him from the practice of law, to continue such suspension, and the Committee's decision to investigate him for new violations of the applicable rules of conduct were taken in retaliation for plaintiff's on-going speech on matters related to parental rights and critical of New York courts' handling of child support and custody maters.  In this regard, plaintiff points to a May 6, 2011 letter he received from an investigator with the Attorney Grievance Committee indicating that that office was opening a grievance file "based on the concern that, despite your current suspension, your website identifies you as a  'civil rights attorney/advocate.'" Pl. ex. D.  The letter asks plaintiff for a written explanation "addressing our concerns that your representation of yourself as a civil rights attorney/advocate is in violation of the Court's orders of suspension."  Plaintiff seemingly contends that the investigation was instituted not because he held himself out as an attorney but because of the content of his speech on his website and his advocacy for certain issues.[5]

Plaintiff also received a Chief Attorney's Inquiry from the Committee dated April 13, 2012.  This instructed plaintiff to answer, *inter alia*, whether he held himself out as an attorney at a civil rights conference held at the Hotel Utica on January 19, 2010; offered or solicited to add individuals as parties to his own parental rights lawsuit for a fee; and filed a number of frivolous claims in two actions dismissed on May 24, 2011 in the Northern

---

[5]Although this inquiry came from the Fourth Department, plaintiff seemingly offers it as an indication of the motive behind the Third Department's pending inquiry, discussed in the text *infra*.

District of New York.[6]  Again, plaintiff contends that the investigation was intended to
retaliate against him for the content of his speech and his advocacy for certain issues.

Plaintiff additionally cites to a May 16, 2012  letter he received from the Committee
as an indication that the Committee is attempting to prevent  his reinstatement to the
practice of law.  This letter indicates that a reply had not been received to the April 13,
2012 Chief Attorney's Inquiry, reminds plaintiff of his obligation to cooperate in an
investigation by the Committee, and indicates that, if necessary, the Committee would
obtain a subpoena to compel plaintiff's appearance for an examination in which case
plaintiff would be required to reimburse the Committee for the stenographic cost of the
examination. Pl. ex. C.

Judge Daley is a retired New York State Supreme Court Justice who presided over
the 2009 domestic support proceeding from which plaintiff's original law license
suspension arose.  Compl. ¶¶ 21-31.  Judge Daley was not formally involved in the Third
Department's September 23, 2010 suspension order and is not formally involved in the
on-going reinstatement process.  *Id.*

Plaintiff alleges that the State Defendants violated his federal constitutional rights
under the First, Fourth, Eighth, Ninth, Tenth and Fourteenth Amendments throughout the
course of his ongoing disciplinary proceedings and orders of suspension of his license to
practice law. *See* Compl. ¶¶ 72 -90 (causes of action 1 through 7).  Plaintiff seeks, inter
alia, to challenge as unconstitutional the Third Department's September 2010 order of

---

[6]This last part of the inquiry appears to be in reference to Judge Hurd's May 24, 2011
Memorandum-Decision and Order in the consolidated cases of John Parent, a/k/a Leon R. Koziol v. State of
New York, et al., 09-CV-233 (NDNY)(lead case) and Koziol v. Lippman, 10-CV-1361 (NDNY)(member case).

suspension, and the on-going reinstatement process and inquiries by the Third

Department's Committee on Professional Standards. *See id.*; Koziol Aff., ¶ 1; Pl. MOL in

Sup. of Cross Mot., p. 1 ("[T]he operative facts before this court are those which followed

the filings and lone district court opinion entered on May 24, 2011."), p. 9 ("This . . . case .

. . is principally a First Amendment, due process and retaliation case filed against persons

acting under color of state law to suppress plaintiff's exercise of protected activities."), p.

11 (complaining of the investigative process being applied to plaintiff by the Third

Department and the Committee on Professional Responsibility).  As indicated above,

plaintiff contends that the complained of actions were taken against him because of his

outspoken positions on various issues in violation of his constitutional rights.

### b.  Claims against the City

Plaintiff alleges that the City of Utica is engaged in a policy, custom and practice of

suppressing Plaintiff's protected activities as a civil rights advocate and local business

owner, compl. ¶ 8, and retaliated against him for his past civil actions against the City. *See*

compl. ¶ 41.[7]  In the same obtuse fashion that the rest of the complaint is pleaded, plaintiff

alleges that the City "failed to properly train and supervise its agents to observe civil rights

laws" and "provided advice and technical assistance to other adversaries acting in concert

with them resulting in damage to plaintiff's domestic relations cases.*" Id.* ¶ 42.[8]  He asserts

further that the City "refused to act upon criminal charges lodged by plaintiff and joint

complainants" against a "discharged lawyer for misappropriating more than $10,000,"

---

[7]Plaintiff also alleges that the City of Utica has engaged in racist practices against certain individuals, although the allegation does not appear to pertain to plaintiff.

[8]It is unclear how or to whom this "advice and tactical assistance" was provided, or how plaintiff's domestic relations cases were damaged.

instead referring the matter for "civil recourse." *Id.* ¶ 43.  Plaintiff alleges that a former

Utica mayor "and his associates" filed felony charges against a former City employee for

allegedly charging $16 of gas without authorization, apparently intending to use this

situation as a contrast to the City's treatment of his complaint. *Id.* ¶ 43.  Plaintiff also

alleges that the City's "select treatment" enabled the "lawyer criminal to continue his

crimes at another office in Syracuse," but that, with plaintiff's assistance, this "lawyer

criminal" was prosecuted and  convicted in another county. *Id.* ¶ 44.

It appears that plaintiff is complaining about the City's lack of prosecution of this

attorney which, somehow, contributed to plaintiff's disciplinary problems.  In this regard,

plaintiff asserts that this attorney filed a disciplinary grievance against plaintiff in 2005

which "was featured in the above referenced ethics investigations and held open until

recent months when it was dismissed." Compl. ¶ *45.*

Plaintiff also asserts that he shared "[a] January 31, 2012 Internal Report" with the

City's police chief that involved "similar activity" to the 2005 ethics complaint against

plaintiff, but that this information was "neglected, treated in bad faith or otherwise left in

limbo."[9]  Plaintiff complains that the "defendant [*sic*] colleagues"  "suppressed or ignored"

ethics complaints that plaintiff filed against the City's corporation counsel. *Id.* ¶ 46.

Plaintiff  offers no theory as to how his rights were violated by these alleged omissions

and/or commissions by the City's agents.

### c.  Claims agiant William Koslosky

Defendant William Koslosky, who does not appear to have been served with

---

[9]It is unclear where the "Internal Report" was from, what it said, how the City could have acted on it, and how the City's failure to do so affected Plaintiff.

process in this action, is the assigned attorney for plaintiff's children in the state court family dispute matter. See Koziol v. Hood, 92 A.D.3d 1161, 1162, 940 N.Y.S.2d 174 (3rd Dept. 2012).  It appears that Kozlosky is included as a defendant in this action because he filed a disciplinary complaint against plaintiff. See compl. ¶ 46.

### d.  Demand for Relief

Plaintiff seeks an award of $50 million in compensatory damages, $1 million in punitive damages, an order enjoining enforcement of the prior state court orders that suspended him from the practice of law, an order declaring that "New York Code Rule 8.4(d)" is unconstitutionally vague and overbroad on its face and as applied to plaintiff,[10] an order enjoining other action that might hinder his reinstatement, and an order "immediately reinstating plaintiff to the practice of law in this court and the courts of the State of New York." Compl. pp. 24-25.

## III.   STANDARD OF REVIEW

On appeal from two cases brought by plaintiff in the Northern District of New York, the Second Circuit reiterated that on a Rule 12(b)(6) motion, the Court must accept

> "all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." Litwin v. Blackstone Grp., L.P., 634 F.3d 706, 715 (2d Cir. 2011) (quoting ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009)). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim will have "facial plausibility when the plaintiff pleads factual content that allows

---

[10]Plaintiff asserts in the complaint that the April 13, 2012 inquiry from the New York Committee on Professional Standards "purports to assert violations of a disciplinary rule, specifically New York Code Rule 8.4(d) which vaguely prohibits an attorney from engaging in conduct which is prejudicial to the administration of justice." Compl. ¶ 58.   The April 13, 2012 inquiry letter refers to "Disciplinary Rule 1-102(A)(5) of the Code of Professional Responsibility [New York Rules of Professional Conduct Rule[] 8.4(d)]."

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  We note that, although this Court usually affords pro se litigants "special solicitude" by, inter alia, liberally construing their pleadings, *see, e.g., Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), as a suspended attorney with over twenty years of experience litigating civil rights cases, Koziol is not entitled to such "special solicitude," *see id.* at 102.

*Parent v. New York*,  2012 WL 2213658, at *1 (2d Cir. June 18, 2012).

 With this standard in mind, the Court turns to the pending motions

## IV.    DISCUSSION

### a. State Defendants' Motion

#### 1.  Judicial Immunity

The State defendants moved to dismiss the claims against them on the basis of

judicial immunity. As Judge Hurd pointed out in his May 24, 2011 Memorandum-Decision

and Order in the consolidated cases of *John Parent, a/k/a Leon R. Koziol v. State of New

York, et al.*, 09-CV-233 (NDNY)(lead case) and *Koziol v. Lippman*, 10-CV-1361

(NDNY)(member case)("*Parent v. State* 5/24/11 Mem. Dec. & Ord.")(decision attached as

exhibit to State Defendant's motion, dkt. # 10-2), "[i]t is well-established that judges enjoy

'absolute immunity from suits for money damages for their judicial actions.'" *Id.* p 18

(quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)).

Allegations of "bad faith or malice" cannot overcome judicial immunity. *Bliven*, 579 F.3d at 209. Indeed, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge," and "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S. Ct. 1099, 1105 (1978). There are only two ways to overcome judicial immunity. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence  of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S. Ct. 286, 288 (1991).

10

When determining whether an action is judicial, courts are instructed "to take a functional approach" and consider whether the action is one expected to normally be performed by a judge. *Bliven*, 579 F.3d at 210. "[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." Id. Even "informal and ex parte" proceedings that are "otherwise within a judge's lawful jurisdiction" are considered judicial. *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 544 (1988). Administrative actions such as terminating a court employee, compiling general jury lists, and promulgating an attorney code of conduct do not fall within the range of judicial actions protected by absolute immunity. *Bliven*, 579 F.3d at 210.

When considering if a judge acted in complete absence of jurisdiction, courts must ask (1) whether a reasonable judge would have thought jurisdiction was proper and (2) if that particular judge knew or had reason to know of such jurisdictional defect. *See Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir. 1988) (distinguishing between a judge who acts in excess of jurisdiction and one who acts in clear absence of all jurisdiction).

*Id*. P. 19-20.

Plaintiff fails to present allegations plausibly suggesting that the Third Department justices lacked jurisdiction to adjudicate, and to continue to monitor, plaintiff's fitness to practice law in the State of New York, or that any named Third Department judicial defendant acted in the knowing absence of jurisdiction.  The complained of conduct, having arisen in the course of the Third Department justices' deliberations regarding plaintiff's disciplinary action,[11] falls squarely within the judicial roles of the Third Department justices. *See Blivens, at 210* ("the Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature."); 22 NYCRR 100.3(D)(3)("Acts of a judge in the discharge of disciplinary responsibilities are part of a judge's judicial duties.").

_____

[11]All allegations made regarding the Third Department justices concern rulings they made during the course of plaintiff's disciplinary action before the court. *See* Compl. ¶ 40. Specifically, plaintiff complains that the Third Department justices allegedly "knowingly" confirmed a false finding of a disciplinary referee, and "knowingly convicted an innocent person [plaintiff]" by issuing the September 23, 2010 suspension order. *Id.*

Plaintiff's assertion that the Third Department justices and Committee lacked "subject matter and geographic" jurisdiction to adjudicate his disciplinary complaints and to investigate him for post-adjudication conduct is specious at best.  The Fourth Department's transfer order (attached as an exhibit to plaintiff's cross motion, *see* Pl. ex. D) indicates that the motion to transfer "the disciplinary matters pending before [the Fourth Department]" was initially made by plaintiff, so plaintiff can hardly make a good faith argument that the transfer itself was improper or unnecessary.  Further, the Fourth Department ordered that "the disciplinary proceedings commenced against [plaintiff] are transferred  to the Committee on Professional Standards  for the Third Judicial Department for such further investigation  as is deemed necessary and for disposition pursuant to the rules of the Appellate Division,  Third Judicial Department." *Id.*   This order provided the Third Judicial Department with both subject matter and "geographic" jurisdiction over plaintiff's disciplinary matters.  Moreover, the Third Department, like any court of competent jurisdiction, has the power and authority to monitor and enforce its own orders.  Thus, there is no lack of jurisdiction attendant with the on going Committee investigation into plaintiff's compliance with the Third Department's order that suspended plaintiff  from the practice of law and that set certain conditions for him to comply with during the period of suspension.

Even assuming, arguendo, that the disciplinary matters were  not properly transferred, a reasonable judge would have thought that jurisdiction over these matters was properly before the Third Department  based on the Fourth Department's transfer order.  *See In Re Koziol*, 76 A.D.3d 1136.  Thus, the Third Department justices are entitled to judicial immunity on plaintiff's claims seeking  monetary damages.

Plaintiff's claims against Judge Daley are also barred by judicial immunity. Plaintiff's convoluted complaint appears to allege improprieties by Judge Daley surrounding his role as presiding judge over a 2009 family law domestic support proceeding. Compl. ¶¶ 21-31. Specifically, plaintiff takes issue with Judge Daley's handling of a recusal motion (*id.* ¶¶ 22-24); Judge Daley's delays in scheduling (*id.* ¶ 26); and general misconduct allegedly perpetrated by Judge Daley in the handling of the domestic support matter (*id.* ¶27). Plaintiff also asserts, in convoluted fashion, that Judge Daley was somehow responsible for the dismissal of one of plaintiff's client's cases "due to non-appearance of plaintiff," (*id.* ¶28), acted improperly in denying a motion to reopen the case after substitute counsel appeared, (*id.* ¶29), and acted "outside of any legitimate judicial process in complete excess of Judge Daley's authority" by "directly causing[ing] the ethics grievance which is now being exploited to prevent plaintiff's reinstatement to the practice of law." (*Id.*). Plaintiff also asserts that his girlfriend received "a cell call from her business partner to the effect that defendant Daley had directed Herkimer County sheriff deputies to investigate her whereabouts," (*id.* §30), and that "the directive  was made for no logical reason other than extrajudicial intimidation."  (*Id.* ¶31).

The claims asserted here against Judge Daley are strikingly similar to those dismissed in *Parent v. State*.  *See Parent v. State* 5/24/11 Mem. Dec. & Ord.  at pp. 23-24;[12] *see also Parent v. State,*  2012 WL 2213658, at *3 (affirming the dismissal of

---

[12]As Judge Hurd wrote:

Plaintiff maintains that Judge Daley "abused his position as a jurist by directing sheriff deputies to investigate [his] girlfriend." Member Compl. ¶ 14. Plaintiff also faults Judge Daley for failing to recuse himself as he had done in previous cases involving plaintiff. Moreover, Judge Daley issued a "willful violation order," which eventually led to the suspension of plaintiff's law license. *Id.* ¶ 91. Finally,
(continued...)

plaintiff's claims against Justice Daley for "substantially the reasons stated by the District Court in its memorandum decision."). Like in *Parent v. State*, the complained of conduct in this case "merely suggest[s] Judge Daley abused his authority, failed to recuse himself, and acted with malice toward plaintiff and his girlfriend. These actions are not enough to overcome judicial immunity." *Parent v. State* 5/24/11 Mem. Dec. & Ord. at p. 24; *see also Stump*, 435 U.S. at 356 ("the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge," and "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." )*; Bliven*, 579 F.3d at 209 (allegations of "bad faith or malice" cannot overcome judicial immunity); *Koziol v. Hood*, 92 A.D.3d at 1161-63;[13] 22 NYCRR 100.3(D)(2)("A judge who receives information indicating a substantial likelihood that a lawyer has committed a substantial violation of the Code of Professional Responsibility

---

[12](...continued)
according to Koziol, Judge Daley improperly ordered all proceeds from the sale of plaintiff's house be held in escrow to cover future child support payments.

Again, plaintiff fails to argue that Judge Daley completely lacked jurisdiction over the divorce proceeding. Although plaintiff suggests Judge Daley, a Supreme Court judge, was acting in a "hybrid capacity" when he presided over a teleconference as "Acting Family Court Judge," he fails to explain how this stripped Judge Daley of jurisdiction. Lead Compl. ¶¶ 13, 85. Plaintiff alleges Judge Daley acknowledged confusion about his jurisdiction and capacity to hear the matter. In the same paragraph, however, plaintiff notes that Judge Daley presided over the hearing as the acting judge assigned to the case by a "designated order" from Judge Lippman. Id. ¶ 85. Therefore, it cannot be said that Judge Daley acted in the clear absence of all jurisdiction.

Plaintiff's allegations merely suggest Judge Daley abused his authority, failed to recuse himself, and acted with malice toward plaintiff and his girlfriend. These actions are not enough to overcome judicial immunity. Accordingly, all claims against Judge Daley will be dismissed.

[13]("Petitioner is also an attorney whose license to practice law is currently suspended for, among other things, his willful violation of an order of support. When petitioner's various actions and proceedings concerning his child support and custody obligations were not resolved to his satisfaction, he commenced this proceeding pursuant to CPLR article 78 in the nature of mandamus and prohibition. . . . While petitioner raises a litany of arguments about the soundness of New York's child support and custody laws, he has not demonstrated a clear right to relief or that any judge involved in his underlying litigation exceeded or is about to exceed his or her jurisdiction.")(citations omitted, emphasis added).

14

shall take appropriate action.").  Accordingly, all claims against Judge Daley are dismissed

under the doctrine of judicial immunity.[14]

### 2.  Quasi-judicial Immunity

Plaintiff also brings claims against three members of the Third Department

Committee on Professional Standards, Monica Duffy, Peter Torncello and Steven Zayas.

These claims implicate the on-going inquiry by the Committee concerning plaintiff's

application for reinstatement following the Third Department's September 23, 2010

suspension order. Compl. ¶¶ 49, 57, 58 - 71.

> The doctrine of quasi-judicial immunity extends absolute immunity to "certain others who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S. Ct. 496, 500 (1985). The Grievance Committee and its members are considered an arm of the judiciary. *See Anonymous v. Ass'n of the Bar of N.Y.*, 515 F.2d 427, 433 (2d Cir. 1975) (noting that disciplinary proceedings are judicial in nature and holding that the state grievance committee acted "as a quasi-judicial body"); [*Thaler v. Casella*, 960 F. Supp. 691, 700 (S.D.N.Y. 1997)](holding that judicial immunity bars claims against the Grievance Committee and its members).

*Parent v. State* 5/24/11 Mem. Dec. & Ord., at p. 17.

The three members of the Third Department Committee on Professional Standards

are protected by quasi-judicial immunity because the claims against them concern their

conduct within the course of their duties.  For the reasons discussed above with regard to

the Third Department justices, plaintiff has failed to present a meritorious basis to defeat

this immunity.  Therefore, these claims are dismissed.

### 3.  Younger Abstention

Under the abstention doctrine recognized in *Younger v. Harris*, 401 U.S. 37,  43-45

---

[14] Because the claims against Justice Daley are dismissed on the grounds of judicial immunity, the Court need not address defendants' argument that the claims are barred by res judicata.

(1971), this Court is deprived of jurisdiction over plaintiff's claims for injunctive relief.

> Under *Younger*, abstention is mandatory where: "1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2000)(quoting *Philip Morris Inc. v. Blumenthal*, 123 F.3d 103, 105 (2d Cir.1997) (internal quotation marks omitted)). Although the *Younger* doctrine was originally formulated in the context of criminal proceedings, it now applies with equal force to civil proceedings, including state administrative proceedings that are "judicial in nature." *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986) (state administrative proceedings); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433–34 (1982) (state bar attorney disciplinary hearings). The doctrine applies to claims for injunctive and declaratory relief. *See Hansel v. Town Court*, 56 F.3d 391, 393 (2d Cir.1995).

*Parent,* 2012 WL 2213658, at *2.

All three *Younger* requirements are met in this case. First, the record reflects that state proceedings are ongoing in plaintiff's state attorney disciplinary matter. *See id.*; *see also* compl. ¶¶ 49, 57-71. Plaintiff's argument that his reinstatement is "in limbo" is insufficient to avoid abstention. The mere fact that plaintiff may not want to comply with the Committee's inquiry does not mean that state proceedings are not ongoing. Second, a state's interest in regulating the conduct of attorneys admitted to its bar has been recognized as an important state interest. *Parent,* 2012 WL 2213658, at *2 (citing *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432–34). And third, plaintiff has an avenue open for review of constitutional claims in the state court. Indeed,

> [u]nder New York law all disciplinary actions against an attorney by a grievance committee are subject to judicial review and an attorney facing disciplinary charges has an adequate opportunity to defend against such on constitutional grounds in the state fora. *Mason [v. Departmental Disciplinary Committee]*, 894 F.2d [512, 515-516 [(2d Cir.), *cert. denied*, 497 U.S. 1025 (1990)]. New York State courts are competent to consider and determine federal constitutional questions and are no less bound to apply Supreme Court precedent than is a federal court and, should the state courts render a decision in contravention of established Supreme Court

16

> precedent, such may be remedied by application to the Supreme Court for a writ of certiorari. *Anonymous [v. Association of the Bar of the City of New York]*, 515 F.2d [427,] 434-435 [(2d Cir.), *cert. denied*, 423 U.S. 863 (1975)]; *Erdmann [v. Stevens]*, 458 F.2d [1205, ]1211 [(2d Cir.), *cert. denied*, 409 U.S. 889 (1972)].

*Hayes v. N.Y. Atty. Griev. Comm.*, No. 01- CV-0545E (SR), 2001 U.S. Dist. LEXIS 18607 at *3-4 (W.D.N.Y. Nov. 1, 2001).

Plaintiff has not presented authority or argument demonstrating that he is barred from bringing his disciplinary matter into state court (perhaps in the nature of an Article 78 or mandamus proceeding) so that he could raise his constitutional challenges to the Third Department and the Committee's actions and/or inactions.  Moreover, plaintiff has not demonstrated that he would be unable to raise his constitutional challenges in state court . *See Parent,* 2012 WL 2213658, at *2 ("despite Koziol's arguments to the contrary, he has not demonstrated that the state courts are an inadequate forum for raising his constitutional claims.") (citing *Hansel*, 56 F.3d at 394 ("So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for *Younger* purposes.")).  Accordingly, Plaintiff's claims for injunctive relief are dismissed.

### b.  The City's Motion

#### 1.  Dismissal

The City moves for dismissal of plaintiff's claims against it on the grounds that the allegations in the complaint "do not come close to alleging any constitutional violations that may have been suffered by Koziol at the hands of any City of Utica agent, officer or employee," City MOL. p, 4, and that, even if a constitutional violation could be discerned from the complaint, plaintiff has failed to alleged sufficient facts to support a plausible

17

policy or practice claim against the City.  *Id.* pp. 7-8.  Plaintiff has not responded to the

City's motion in this regard. See Pl. MOL.  The Court agrees with the City.

"[T]here exists no constitutionally protected right to file criminal charges against

another." *Reeder v. Artus*, 2010 WL 3636138, at *14 (N.D.N.Y. July 27, 2010)(citing

*Langworthy v. Dean*, 37 F. Supp.2d 417, 422 (D. Md.1999) ("[A] right to compel the

prosecution of criminal activity does not exist.")).  Thus, to the extent that plaintiff claims

City officials or agents are liable because they failed to act upon his request to compel

criminal prosecution of another, such a claim is not cognizable on federal review.  *See id.*

For the same reason, there is no plausible claim against the City for failing to act on

plaintiff's disciplinary misconduct charges against the City's corporation counsel.  Those

matters are entrusted to the discretion of the pertinent state grievance committee and

court, and to the extent they concern personnel matters, to the City.  Plaintiff has no

constitutional right to the action he apparently desired from the City.  Without a

constitutional or federal violation plausibly committed by the City or its agents, plaintiff

cannot establish municipal liability under *Monell v. New York City Dept. of Social Services*,

436 U.S. 658 (1978).  *See  City of Oklahoma v. Tuttle*, 471 U.S. 808 (1985)(to establish

municipal liability under 42 U.S.C. 1983, a plaintiff must plead and prove an affirmative link

between the municipality's policy and the particular constitutional violation alleged); *Sarus*

*v. Rotundo*, 831 F.2d 397, 400 (2nd Cir.1987)(" ... a § 1983 plaintiff must prove the

existence of a municipal policy or custom that causes injuries and, second, the plaintiff

must establish a causal connection ... between the policy and the deprivation of his civil

rights.")(quotation marks and citations omitted).   The claims against the City are

dismissed.

### 2.  Sanctions

Although plaintiff's claims against the City appear frivolous, the City's motion for

monetary sanctions and to bar plaintiff from future similar filings fails to comply with the

procedural requirements of Fed. R. Civ. P. 11(c)(2).[15] Therefore, this part of the motion

must be denied. *See Houston v. Manheim-New York*,  475 Fed. Appx. 776, 779 (2d Cir.

April 11, 2012)("[R]emanding to the District Court on the motion for sanctions would be

futile because [plaintiff] violated Rule 11(c)(2) of the Federal Rules of Civil Procedure, a

safe harbor provision, which required him to serve the sanctions motion on the opposing

party twenty-one days prior to its filing."); *Fierro v. Gallucci*, 423 Fed. Appx. 17, 18-19 (2d

Cir. May 23, 2011)("[T]he district court was required to deny plaintiffs' motion for sanctions

for failure to comply with the 21–day 'safe harbor,' which requires Rule 11 motions to be

served on the opposing party 21 days prior to their filing, in order to afford that party an

opportunity to withdraw their allegedly sanctionable claims.").

### c.  Preliminary Injunction

Because the Court has already ruled that plaintiff's claims for injunctive relief are

barred by the doctrine of *Younger* abstention, the claims for injunctive relief are dismissed

and the cross motion seeking a mandatory preliminary injunction is denied. *See Covino v.

Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992)(a movant seeking a preliminary injunction must

---

[15]This provides in pertinent part:

> **Motion for Sanctions**. A motion for sanctions must be made separately from any other
> motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion
> must be served under Rule 5, but it must not be filed or be presented to the court if the
> challenged paper, claim, defense, contention, or denial is withdrawn or appropriately
> corrected within 21 days after service or within another time the court sets.

show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.); *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996), <u>cert. denied</u>, 525 U.S. 824 (1998)(Where a movant seeks relief which will alter, rather than maintain, the status quo, the injunction sought is properly characterized as mandatory rather than prohibitory.  A party seeking a mandatory injunction must make a "clear" or "substantial" showing of the likelihood of success, as well as irreparable harm should the injunction not be granted.); <u>Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc</u>., 60 F.3d 27, 34 (2d Cir.1995)("[A] mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.")(internal quotation omitted).

### d.  William Koslosky

William Koslosky does not appear to have been served with process in this matter which was filed on May 18, 2012.  Therefore, the claims against Koslosky can be dismissed pursuant to Fed. R. Civ. P. 4(m).  Furthermore, the Court discerns no viable claim against Koslosky from the complaint.  Accordingly, all claims against William Koslosky are dismissed without prejudice.

## V.    CONCLUSION

For the reasons set forth above,

(1) the State Defendants' motion to dismiss [dkt. # 10] is **GRANTED** and all claims against Karen Peters, Thomas Mercure, Robert Rose, John Lahtinen, Edward Spain,

Bernard Malone, Jr., Michael Kavanaugh, Leslie Stein, William McCarthy, Elizabeth Garry, John Egan, Jr., Monica Duffy, Peter Torncello, Steven Zayas, and Michael Daley are **DISMISSED;**

(2) the City of Utica's motion [dkt. # 12] is **GRANTED IN PART AND DENIED IN PART**. The motion is granted in that all claims against the City of Utica are **DISMISSED**. The motion is denied as to the City of Utica's motion for monetary sanctions and to prevent plaintiff from filing similar actions;

(3) the plaintiff's cross-motion for a preliminary injunction [dkt. # 16] is **DENIED;** and

(4) the claims against William Koslosky are **DISMISSED WITHOUT PREJUDICE**.

The Clerk of the Court is instructed to mark this case closed.

**IT IS SO ORDERED**

**Dated:** October 11, 2012

Thomas J. McAvoy
Senior, U.S. District Judge

21